**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL J. PICCA,<br><br>Defendant. | No. 4:22-CR-00361<br><br>(Chief Judge Brann) |

# MEMORANDUM OPINION

**NOVEMBER 18, 2026**

"[T]he government has a statutory obligation to ensure that the purposes of the Speedy Trial Act are carried out."[1] In this case, the Government has failed to uphold this responsibility.

Because both "the defendant and the public have an interest in a speedy criminal trial,"[2] on October 20, 2026, the Court ordered the Defendant, Daniel J. Picca ("Picca"), to review the record in this case to determine if there had been a speedy trial violation.[3] This led Picca to file a motion to dismiss the indictment based on alleged violations of his statutory and constitutional speedy trial rights.[4] That motion has now been fully briefed and is ripe for disposition. For the reasons that follow, the indictment in this case will be dismissed without prejudice.

---

1 *United States v. Lattany*, 982 F.2d 866, 882 (3d Cir. 1992); *see also Barker v. Wingo*, 407 U.S. 514, 527 (1972) ("A defendant has no duty to bring himself to trial; the State has that duty…").
2 *United States v. Carrasquillo*, 667 F.2d 382, 389 (3d Cir. 1981).
3 Doc. 108.
4 *See* Doc. 109.

## I. SHOULD THE INDICTMENT BE DISMISSED?

Picca argues that his statutory right to a speedy trial has been violated.[5] In response, The Government does not dispute that there has been a violation of the Speedy Trial Act.[6] Both parties correctly note that the Act states that "[t]he Speedy Trial Act requires that trial commence within seventy days of a defendant's initial appearance or of the filing and making public of the indictment, if later."[7] While there are many exceptions that "pause the speedy trial clock and exclude periods of delay,"[8] the indictment must be dismissed if "a defendant is not tried within the seventy-day countdown."[9]

The seventy-day countdown has long since passed in this case. Despite the Defendant's apparently ardent belief that this Court should look back to a point before the indictment, or superseding indictment, were filed, it is not necessary to do so.[10] On December 30, 2025, the Court issued a memorandum opinion and order that resolved the pending motions to dismiss, suppress, and modify supervision conditions.[11] After that date, neither the Government, nor the Defendant, took any

---

5 Doc. 109 ¶ 36.
6 Doc. 111, at 4 ("The government concedes a violation of the Speedy Trial Act").
7 *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993).
8 *United States v. Burrows*, No. 24-2766, 2026 WL 1734913, at *4 (3d Cir. June 16, 2026) (citing *United States v. Adams*, 36 F.4th 137, 144 (3d Cir. 2022)).
9 *Id.* (citing 18 U.S.C. § 3162(a)(2)).
10 *See generally* Doc. 110.
11 Docs. 99-100.

action until the pending motion was filed.[12] Instead, the Court scheduled a status conference to discuss the lack of movement in the case, and, subsequently, entered an Order on August 7, 2026 that scheduled a date-certain trial for January 2027 and excluded all time after August 7 through that trial date from the speedy trial countdown.[13]

The time between December 30, 2025, and August 7, 2026, amounts to 220 days.[14] This is more than three times the Speedy Trial Act's seventy-day time limit.

---

12 The Defendant did file a motion to extend his curfew in July and a motion to modify the conditions of release in late September. *See* Docs. 101, 107. Neither of these motions has any relevance to this speedy trial analysis, as neither stood in the way of this case proceeding to trial.

13 Docs. 103, 105. Importantly, the August 7, 2026 Order cannot apply retroactively. *United States v. Brenna*, 878 F.2d 117, 121 (3d Cir. 1989) (Speedy Trial Act violated when District Court did not enter continuance "until after the expiration of the statutory seventy-day time limit").

14 The Defendant's attempt to turn the Court's attention towards time before December 30, 2025 for this Speedy Trial Act analysis is in vain, as his arguments are without merit. First, he implies that the period before his original indictment should be considered. *See* Doc. 110, at 7-8. But he admits that it cannot be counted by citing to *Hakeem v. Beyer*, which states that "delay is measured from the date of formal accusation, *i.e.,* from the earliest date of arrest or indictment until the commencement of trial." 990 F.2d 750, 760 (3d Cir. 1993). Because the period of pre-indictment delay Picca speaks of was prior to even the arrest or original indictment, it clearly cannot be considered in this Speedy Trial Act analysis.

Additionally, Picca seeks to have the Court consider the entire time between the original indictment and the scheduled date of trial. *See* Doc. 110, at 8. Initially, this appears to confuse the statutory and constitutional calculations for speedy trial delays, as will be discussed below. It also ignores the eight motions to continue that were filled by the Defendant and granted by the Court. In each of these motions, defense counsel stated some form of "[t]he delay by this Motion is excludable pursuant to 18 U.S.C. § 3161(h)(8)(A) [of the Speedy Trial Act]." *See, e.g.*, Doc. 24 ¶ 8. In the Orders granting these motions, the Court stated each time that "[f]or purposes of the Speedy Trial Act, the period of delay resulting from the requested continuance is excludable." *See, e.g.*, Doc. 25 ¶ 5. Therefore, this time has already been found to be excludable for speedy trial purposes based on the agreement of both the Defendant and the Government. The Court will not permit defense counsel to now claim that these continuances were solely caused by the Government. Instead, the Court will hold the Defendant to his word in each of the eight continuance motions that "the delay by th[ese] motion[s] is excusable."

As a result, according to the Act, the indictment *must* be dismissed.[15] But, as both parties agree on this point, the dispute nested within this motion lies elsewhere.

## II. DISMISSAL WITH OR WITHOUT PREJUDICE

What is ultimately at issue in this motion is whether the dismissal of the indictment should be with or without prejudice. The Government argues that despite the admitted violation, the indictment should be dismissed without prejudice,[16] rather than with prejudice, as the Defendant seeks.[17] To determine which avenue is correct, it is necessary to conduct an analysis under both the Speedy Trial Act and the Sixth Amendment.[18]

### A. Statutory Analysis

As previously stated, "[o]nce a defendant establishes a violation of the Speedy Trial Act, the district court must dismiss the indictment."[19] However, this does not conclude a Speedy Trial Act analysis, as the Court must still decide whether such

---

*See, e.g.*, Doc. 24 ¶ 8. As the time between December 2, 2022 and December 30, 2025 has previously been held to be excusable (or saw pending motions), this extensive period will not be held to be delay for the purposes of this this Speedy Trial Act analysis.

15 18 U.S.C. § 3162(a)(2).

16 Doc. 111, at 16.

17 Doc. 110, at 13.

18 The Court notes that the Defendant's briefing fails to appreciate that these are two separate analyses. *See* generally Doc. 110. While Picca brought the motion under both the Speedy Trial Act and the Sixth Amendment, his briefing does not discuss the statute's analysis at all. *Compare* Doc. 109, at 1, *with* Doc. 110, at 5-6. Instead, there is only a discussion of the test for the Sixth Amendment's speedy trial right advanced in his brief. *See* Doc. 110, at 5-6. I cannot discern whether this lack of argument arises from defense counsel's confusion surrounding an admittedly difficult doctrine, or a strategy intended to confuse the Court. Both bases of the speedy trial right will be analyzed here.

19 *United States v. McNeil*, 416 F. App'x 227, 229 (3d Cir. 2011).

dismissal will be with or without prejudice. To make this determination, "the Act requires the court to 'consider, among others, each of the following factors: [1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of this chapter and on the administration of justice.'"[20] Additionally, the Supreme Court of the United States has explained that "the presence or absence of prejudice to the defendant" was without a doubt intended "be relevant for a district court's consideration."[21] Importantly, "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation."[22]

After a careful review of these factors, it is clear that each counsel in favor of dismissal *without* prejudice. Looking to the first consideration, the seriousness of the offense "centers primarily on society's interest in bringing the particular accused to trial."[23] Ultimately, it cannot be disputed that an offense surrounding the receipt and production of child pornography and the transmission of information about minors is extremely serious.[24] First, this is supported by the fact that the Defendant does not

---

20 *United States v. Stevenson*, 832 F.3d 412, 419 (3d Cir. 2016) (quoting 18 U.S.C. § 3162(a)(2)). In conducting this review, "a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." *United States v. Taylor*, 487 U.S. 326, 336 (1988).

21 *Taylor*, 487 U.S. at 334 (cleaned up).

22 *Id.*

23 *Stevenson*, 832 F.3d at 421 (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)) (internal quotation marks omitted).

24 *See* Doc. 35.

even attempt to dispute that this offense is serious.[25] Next, if the gravity of the offense was not apparent from its description, Picca also faces exposure to a significant mandatory minimum sentence—that of five years—for the receipt of child pornography charge.[26] District courts in this Circuit have considered such mandatory minimum exposure to illustrate an offense's seriousness.[27] Finally, the United States Court of Appeals for the Third Circuit has held that drug and firearms offenses "are serious crimes for purposes of the Speedy Trial Act."[28] If our Court of Appeals treats guns and drugs as serious for this analysis, the Court sees no reason to treat child pornography charges as any less serious. In sum, it is apparent that this first factor weighs in favor of dismissal without prejudice.

The second consideration also weighs in favor of dismissal without prejudice. "This factor requires courts to consider the reasons for the delay: did it stem from 'intentional dilatory conduct' or a 'pattern of neglect on the part of the Government,' or rather, from a relatively benign hitch in the prosecutorial process?"[29] Here, while "the Government certainly neglected its duties by failing to bring this case to trial during the statutorily proscribed period, the broader facts and circumstances indicate

---

25 *See generally* Doc. 110.

26 18 U.S.C. § 2252(b)(1).

27 *See United States v. Stevenson*, No. 3:12-CR-145, 2014 WL 12705000, at *4 (M.D. Pa. Sept. 4, 2014); *United States v. Palmer*, No. CR 22-00282, 2024 WL 3952074, at *6 (D.N.J. Aug. 27, 2024).

28 *Stevenson*, 832 F.3d at 420.

29 *Id.* (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005)).

that the Government's error was relatively innocent and harmless."[30] There is no evidence that the Government "acted in bad faith or to gain some tactical advantage."[31] Finally, there is no evidence of any "pattern of neglect," and the non-excludable time in this case was "dwarfed by the hundreds of days that had been excluded."[32] Instead, the negligence of the Government in this case is closer to "an isolated unwitting violation."[33] Taken together, these findings weigh in favor of dismissing the indictment without prejudice. However, "[i]n so ruling, the Court in no way intends to understate the seriousness of the violation that occurred in this matter. But the 'fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice.'"[34]

The third and final consideration—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice—also favors dismissal without prejudice. "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in

---

30 *Stevenson*, 2014 WL 12705000, at *4.

31 *Stevenson,* 832 F.3d at 420.

32 *Id.* at 420-21. For the parties reference, there were 49 days of non-excludable time before the first continuance was filed in this case and 220 days of such time after the defense motions were denied in December 2025. This totals 269 non-excludable days. In contrast, the time between December 9. 2022 and December 30, 2025 was entirely excludable time for the purposes of speedy trial. This time totals 1,117 days.

33 *Id.* at 420.

34 *United States v. Palmer*, No. CR 22-00282, 2024 WL 3952074, at *7 (D.N.J. Aug. 27, 2024) (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005)).

prosecutorial misconduct that must be deterred to ensure compliance with the Act."[35] As previously stated, there is no indication of prosecutorial misconduct present in this case beyond mere negligence. Additionally, while the Defendant has made overwrought statements about his anxiety and potential impairment of his defense, he has presented not a single bit of evidence that he has been prejudiced in any way by this delay.[36] Importantly, this means that Picca has failed to show that the Speedy Trial Act violation undermined his "ability to prepare for trial," and the Court has can deduce no "indication that the delay impaired [Picca's] ability to mount an effective defense."[37]

Additionally, two months before the Court raised an inkling of a speedy trial issue, defense counsel indicated that he and his client were more than ready for trial and did not mention that there were any difficulties in their preparations. As a result, it is hard to believe that two months later, the Defendant has been unduly prejudiced

---

35 *Stevenson,* 832 F.3d at 422 (quoting *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000)) (internal quotation marks omitted).

36 The Court has considered any potential prejudice that could have occurred, including the three interests that speedy trial is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972).

37 *Stevenson,* 832 F.3d at 422 (citing *United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir. 1988) (internal quotation marks omitted).

by the delay.[38] Therefore, this consideration also weighs in favor of dismissal without prejudice.[39]

In sum, all three of the enumerated section 3162(a) factors favor dismissal without prejudice and that is the destination the statutory violation reaches.[40]

### B. Constitutional Analysis

While the violation of his statutory right does not lead to dismissal *with* prejudice, Picca has included another argument in his motion that may. That is, a violation of the Sixth Amendment's right to a speedy trial.[41] "In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court established a balancing test to determine whether a criminal defendant's constitutional right to a speedy trial has been violated. The *Barker* Court identified four factors that courts must consider: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right;

---

38 Picca makes no Speedy Trial Act argument in his brief in support, but in his constitutional argument he relies a great deal on the notion of presumption of prejudice when discussing the prejudice factor of *Barker*. *See* Doc. 110. The Court can find no caselaw to support there being a presumption of prejudice when conducting a statutory analysis under the Speedy Trial Act. Therefore, I have not discussed it in this section's analysis.

39 As a final note, some courts in this Circuit have found that when the defendant has agreed to continuances in the case, it suggests that the delay may have helped him prepare for trial. *See, e.g.*, *United States v. Palmer*, No. CR 22-00282, 2024 WL 3952074, at *10 (D.N.J. Aug. 27, 2024).

40 For a case with a similar timeframe of non-excludable days resulting in identical result, *see United States v. Jones*, 213 F.3d 1253, 1258 (10th Cir. 2000) (holding that although a delay between 216 and 414 non-excludable days "is very serious and ... [u]nder different circumstances, such a lengthy delay would likely warrant dismissal with prejudice," given "the seriousness of the crimes ..., the government's relative lack of culpability for the delay, and [the defendant's] inability to demonstrate prejudice, we cannot say that the district court abused its discretion in dismissing the indictment without prejudice").

41 *See* Doc. 109, at 1; Doc. 110, at 5-6.

and (4) prejudice to the defendant."[42] Importantly, "[d]ismissal of the indictment with prejudice is the only possible remedy" for a violation of the Sixth Amendment's speedy trial right.[43]

### 1. Length of Delay

While "[n]one of these [*Barker*] factors is either a necessary or sufficient condition,[44] "length of the delay is to some extent a triggering mechanism."[45] Here, both parties correctly note that there has been a sufficient amount of time to consider the remaining *Barker* factors, even though they do not agree on the amount of time that made up the delay.[46]

"In general, delay is measured from the date of arrest or indictment, whichever is earlier, until the start of trial."[47] Picca was initially indicted on October 10, 2022, before he was arrested.[48] A date-certain trial is currently scheduled in this case for January 2027.[49] This means that the length of delay for the constitutional analysis is approximately forty-nine months. A delay of around this time has been found by the

42 *United States v. Burrows*, No. 24-2766, 2026 WL 1734913 (3d Cir. June 16, 2026) (internal citations omitted).

43 *United States v. Moreno*, 789 F.3d 72 (2d Cir. 2015) (internal quotation marks omitted).

44 *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (citing *Barker*, 407 U.S. at 533) (internal quotation marks omitted).

45 *Barker*, 407 U.S. at 530.

46 *See* Doc. 110, at 7-9; Doc. 111, at 11-2.

47 *Battis*, 589 F.3d at 679.

48 *See* Doc. 1. Importantly, a speedy trial delay for Sixth Amendment purposes is not affected by the filing of a superseding indictment. *See Battis*, 589 F.3d at 679 n.5; *see also United States v. Dreyer*, 533 F.2d 112 (3d Cir.1976).

49 *See* Doc. 105.

Third Circuit to "require consideration of the remaining *Barker* factors."[50] However, this is a fact-specific inquiry, and based on this case, the Court believes that the delay should allow for further analysis of the *Barker* factors.

But this triggering does not end the "double inquiry" of the first factor.[51] Rather, the Court must now "assess the extent to which the delay was long enough to 'intensify' the prejudice caused by the delay."[52] I conclude that this amount of time is long enough to intensify the prejudice caused by the delay, and a result, the first factor "weighs heavily against the Government."[53]

**2. Reason for Delay**

The reason for a delay in a criminal prosecution, can be grouped into three possible categories.[54] First, "[a] deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government."[55] Second, "[a] more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily."[56] Finally, "a valid reason, such as a

---

50 *Battis*, 589 F.3d at 679. After a review of the caselaw surrounding this factor, the Court notes that the Government is mistaken in its belief that the length of delay for constitutional purposes is identical to the delay calculated for statutory purposes. However, even if it was, Third Circuit precedent establishes that the 269 days of delay is sufficient to consider the remaining Barker factors, if only just. *See Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (citing approvingly a Seventh Circuit case that found an eight and one-half month delay, a similar amount of time as is the delay in this case, to trigger inquiry of the remaining *Barker* factors).

51 *Doggett v. United States*, 505 U.S. 647, 651 (1992).

52 *Battis*, 589 F.3d at 678 (quoting *Doggett*, 505 U.S. at 652).

53 *Id.* at 679.

54 *Id.*

55 *Id.* (quoting *Barker v. Wingo*, 407 U.S. 514, 531 (1972)) (internal quotations marks omitted).

56 *Id.* (quoting *Barker*, 407 U.S. at 531) (internal quotations marks omitted).

missing witness, should serve to justify appropriate delay. By contrast, delay caused by the defense weighs against the defendant, including delay caused by the defendant's counsel."[57] Overall, to evaluate this second *Barker* factor, the Court must "subtract the amount of delay caused by the defendant from the delay caused by the Government."[58] And, all importantly here, the Government bears the burden to justify the delay.[59]

In this case, the Government has failed in upholding this burden. The delay in this case can be broken down into three segments: (1) the period between Picca's arrest and the first continuance being filed, (2) the period encompassing the eight continuances moved for by Picca and the consideration of the motions to dismiss and suppress, and (3) the period following December 30, 2025, when this Court decided the motions to dismiss and suppress, and the date the trial was formally scheduled, August 7, 2026.

The first period amounts to 49 days. The second period encompassed the time between December 9, 2022 and December 30, 2025, totaling 1,117 days. In the Government's brief on the present motion, it did not attempt to justify this three-plus year delay or provide any explanation for it.[60] This failure to justify the delay in this case is likely explained by the Government's confusion over what the constitutional

---

[57] *Id.* at 679-80 (internal citations quotations marks omitted).
[58] *Id.*
[59] *Id.* at 680.
[60] *See* Doc. 111, at 13.

delay amounted to compared to the statutory delay that it seems to have correctly calculated.[61] Therefore, because of this confusion and the fact that there is absolutely no evidence of any bad faith on the part of the Government, I find that the period between the initial indictment and December 30, 2025 constituted a neutral reason for delay.[62] This means that it only marginally weighs against the Government.[63]

Finally, the 220 days between December 30, 2025 and August 7, 2026 must be addressed. The Government argues that this delay was a result of "inadvertence and deference to this Court's practice of convening scheduling conferences, and not to gain a tactical advantage."[64] This explanation misses the mark. Initially, it is clear that the word inadvertence is the Government's way of saying it was negligent, a reason that leads to the justification weighing against the Government. Therefore, this delay was caused by a neutral reason that weighs against the Government in this analysis.

But, most importantly, this is a blatant attempt to shift the blame for the Government's negligence to the Court. "[I]t is the Government's duty to bring a defendant to trial."[65] This Court has never sought to take up the duty to move the

---

61 *See* Doc. 111, at 11-12.

62 This comports with the fact that even if there was an issue turning over complete discovery as Defendant alleges, *see* Doc. 110, at 8-9, there is no indication that the delay was in bad faith or to obtain a tactical advantage. Instead, like the following period, it appears to have been due to the Government's negligence. This is a reason that weighs against the Government, but not heavily. *Battis*, 589 F.3d at 679.

63 *See Battis*, 589 F.3d at 679.

64 Doc. 111, at 15.

65 *Battis*, 589 F.3d at 679.

Government's cases along, and the only times that it has *sua sponte* issued orders or held scheduling conferences has been when the Government has been negligent in its duty to advance cases, as is the case here. While the Court believes that it has a joint responsibility with the Government to ensure that speedy trial rights are upheld,[66] "the government has a statutory obligation to ensure that the purposes of the Speedy Trial Act are carried out."[67] "It is the duty of the public prosecutor, not only to prosecute those charged with crime, but also to observe the constitutional mandate guaranteeing a speedy trial."[68] The Government cannot abandon its speedy trial responsibility, and it certainly cannot do so by pointing to a practice of this Court that is unexplained and has never been a substitute for prosecutors upholding their duty to move their cases forward.[69] The Government had a responsibility to

---

66 *See* Doc. 108, at 1 n.1.

67 *United States v. Lattany*, 982 F.2d 866, 882 (3d Cir. 1992).

68 *Dickey v. Fla.*, 398 U.S. 30, (1970) (Brennan, J., concurring) (quoting *United States v. Dillon*, 183 F.Supp. 541, 543 (S.D.N.Y. 1960)).

69 *See United States v. Gabrielian*, No. CR SAG-22-336, 2024 WL 2384148, at *18 (D. Md. May 22, 2024) ("The Government is supposed to be pressing the case forward expeditiously at all times, not waiting for the Defendants … or the Court to take further action"); *Com. of Pa., Dep't of Pub. Welfare v. Markiewicz*, 930 F.2d 262, 264 (3d Cir. 1991) ("The prosecuting attorney must prosecute the case diligently"). It is unclear what the Government means by its statement that the Court has a "practice of convening scheduling conferences." Doc. 111, at 15. The Court has never had a practice of scheduling status conferences when there has been no motion for continuances filed in a criminal case. Further, the Court almost always schedules conferences at a party's request, not on its own volition. The Court will only schedule a conference *sua sponte* in a criminal case, when the Government has abdicated its own duty to advance its cases to trial.

take action in this case after the Court disposed of the pending motions in December of last year. It did not do so due to its own negligence.[70]

In sum, the majority of the delay in this case was caused by neutral reasons.[71] Therefore, as a whole, this factor marginally weighs in the Defendant's favor.

### 3. Defendant's Assertion of the Right

The Third *Barker* factor looks to "the degree to which the defendant asserts his speedy trial right, including the frequency and force of such assertions."[72] " An assertion of this right provides evidence that the defendant was being deprived of his constitutional right since '[t]he more serious the deprivation, the more likely a defendant is to complain.'"[73] As a result, "failure to assert the right will make it

---

[70] Inherent in the statement of the Government is that it knew of the violation of the Speedy Trial Act, but did nothing because of deference to the Court. This is false. The Court raised this issue on its own. *See* Doc. 108. There is no indication that the Government, or the Defendant, had any knowledge of a potential issue prior to the Court doing so.

[71] However, there is a caveat to this statement. The record shows that the delay during the period encompassing the continuances was not entirely the fault of the Government. Instead, the "delay was caused by reasonable requests by both sides for more time [and] [Picca]'s … motions." *United States v. Jones*, No. 20-2765, 2021 WL 6337787, at *2 (3d Cir. Sept. 10, 2021). This is supported by the fact that despite the claim of the Defendant that the continuances were all filed because of a delay in the Government turning over complete discovery, *see* Doc. 110, at 8-9, the record shows that a great deal of the delay was not for this reason. On May 3, 2024, defense counsel stated that "[e]lectronic discovery has been received." Doc. 48 ¶ 6. From this date through the disposition of the Defendant's pre-trial motions, December 30, 2025, delays in this case had nothing to do with the Government and is found to have been caused by the Defendant. Therefore, I have not considered this time as weighing against the Government in my analysis, and find that it weighs slightly against the Defendant. Nevertheless, because the complete time before and after is greater than the defense-caused period, I find that in sum this second factor marginally weighs against the Government.

[72] *United States v. Claxton*, 766 F.3d 280, 296 (3d Cir. 2014) (quoting *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014)) (internal quotation marks omitted).

[73] *United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009) (citing *Barker v. Wingo*, 407 U.S. 514, 531 (1972)).

difficult for a defendant to prove that he was denied a speedy trial."[74] "Moreover, when a defendant requests a speedy trial, but 'through contrary actions ... evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight.'"[75] It is important to note "that even if a defendant fails to adequately assert his right to a speedy trial, that means only that the third *Barker* factor will be weighed against him. It does not mean that he cannot claim that his right to a speedy trial was violated."[76]

The Defendant's arguments on this issue are entirely devoid of support from the record.[77] Defense counsel first claims that he "previously filed a motion to dismiss pursuant to the Sixth Amendment."[78] To start, this motion to dismiss was not even brought under the Sixth Amendment, it was instead brought under the Fifth.[79] Further, what Picca only admits in a footnote is that, this motion "was based on prejudicial pre-indictment delay" and bears no reference to any speedy trial rights.[80] As a result, the motion to dismiss cited to by defense counsel clearly was

---

74 *Barker*, 407 U.S. at 532.

75 *Battis*, 589 F.3d at 681 (quoting *Hakeem v. Beyer*, 990 F.2d 750, 765 (3d Cir. 1993)).

76 *Id.*

77 Picca also makes an argument on this factor related to the Government's delay in turning over discovery. *See* Doc. 110, at 10. While this argument has some support in the record and may explain the lack of previous assertion of his constitutional speedy trial right, it says nothing about the degree to which he has asserted this right. As a result, it is irrelevant to an analysis of the third *Barker* factor.

78 Doc. 110, at 9.

79 *See* Doc. 65, at 1 ("pursuant to Rule 12(b)(3)(B) and Rule 48(b) of the Federal Rules of Criminal Procedure, and the Fifth Amendment, [the Defendant] respectfully moves the Court to dismiss the superseding indictment").

80 *Id.* at 10 n.4; *see also* Docs. 65, 66, 86.

not a prior invocation of even the Amendment that serves as the home for the constitutional speedy trial right, let alone an invocation of the right itself.

Next, defense counsel states that Picca "has demonstrated his willingness throughout this case to proceed to trial and exercise his Sixth Amendment right to a trial."[81] While this statement facially sounds as if it would be helpful to the Defendant, it is supported by not a single citation. The reason for this is that there is no evidence in the record to support the notion that Picca or his counsel has sought to proceed to trial or exercise any Sixth Amendment right. The fallacy demonstrated in this statement by defense counsel illustrates the fact that the pending motion to dismiss is the first time that Picca has ever raised his speedy trial rights.[82]

What these arguments attempt to do is re-write the record of this case into a scenario where Picca has clearly, forcefully, and repeatedly asserted his Sixth Amendment speedy trial right in the past. But this would be fiction. In reality, the Court raised the speedy trial issue on its own.[83] Picca, meanwhile, never asserted a speedy trial right of any form prior to this pending motion, and arguably acquiesced in the delay in taking him to trial by filing eight motions to continue. In sum, because of the years-long delay in raising this issue the third factor weighs heavily against

---

[81] Doc. 110, at 10.

[82] Picca is correct that this lack of assertion does not mean his speedy trial rights are waived. *See United States v. Battis*, 589 F.3d 673, 681 (3d Cir. 2009).

[83] *See* Doc. 108.

Picca.[84] Further, "[t]o the extent that promptness in asserting the right is important, then [Picca's] silence ... works against him because it suggests that any hardships he suffered were either minimal or caused by other factors."[85]

### 4. Prejudice

The last factor, prejudice, has been dubbed the "most important" by the Third Circuit.[86] "Various types of prejudice can result from a pretrial delay: oppressive pretrial incarceration, the accused's anxiety and concern over the outcome of the litigation or impairment of the defense, including general concern over the delay's effect on the reliability of the truth finding process."[87] A defendant can show prejudice in one of two ways: "specific prejudice or presumptive prejudice."[88]

> A defendant can establish specific prejudice by showing that he was subject to "oppressive pretrial incarceration," that he suffered "anxiety and concern" about the impending trial, or that his defense was impaired as a result of the delay. However, in *Doggett,* 505 U.S. at 655, 112 S.Ct. 2686, the Court held that "consideration of prejudice is not limited to the specifically demonstrable," and allowed defendants to claim prejudice without providing "affirmative proof of particularized prejudice." Given that "time's erosion of exculpatory evidence and testimony" can hinder a defendant's ability to prove that his defense

---

[84] *See United States v. Vasquez-Uribe*, 426 F.App'x 131, 138 (3d Cir. 2011) (third Barker factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance); *United States v. Jones*, No. 20-2765, 2021 WL 6337787, *2 (3d Cir. Sept. 10, 2021) ("He waited more than three years after his arrest to assert his right only on the eve of trial") (internal quotation marks omitted); *United States v. Palmer*, No. CR 22-00282, 2024 WL 3952074, at *10 n.10 (D.N.J. Aug. 27, 2024) (quoting *Jones*, 2021 WL 6337787, at *2).

[85] *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976).

[86] *Hakeem v. Beyer*, 990 F.2d 750, 764 (3d Cir. 1993).

[87] *Id.* (citing *Barker,* 407 U.S. at 532).

[88] *United States v. Burrows*, No. 24-2766, 2026 WL 1734913, at *4 (3d Cir. June 16, 2026) (citing *United States v. Battis*, 589 F.3d 673, 682 (3d Cir. 2009)).

> was impaired by a delay, the Court stated that "we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. This presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government "affirmatively prove[s] that the delay left [the defendant's] ability to defend himself unimpaired."[89]

Here, Picca has advanced arguments of both specific and presumptive prejudice. As an initial matter, all of his claims of specific prejudice must fail. First, Picca was never incarcerated and to the extent that electronic monitoring or home confinement can act as a stand in, there are no allegations that these forms of pretrial supervision were in any way oppressive.[90] Therefore, his pretrial supervision cannot act as a form of specific prejudice in this case.

Next, Picca argues that he has experienced physical and emotional anxiety as a result of this prosecution. However, "[v]ague allegations of anxiety are insufficient to state a cognizable claim."[91] Moreover, a "defendant must show that his anxiety extended beyond that which 'is inevitable in a criminal case.'"[92] Notably absent from Picca's discussion about the experience of anxiety is any mention of how the delay

---

89 *Battis*, 589 F.3d at 682 (internal citations omitted).

90 *See* Doc. 110, at 11-12.

91 *Hakeem v. Beyer*, 990 F.2d 750, 762 (3d Cir. 1993). Picca would likely counter that the remaining portions of his paragraph on anxiety in his brief in support make his claim not vague. *See* Doc. 110, at 12 (discussing the indignity and inconvenience of being arrested in his hometown, his standing and reputation in the State College community, and his financial hardship). But this paragraph is devoid of any details that would allow the Court to corroborate his allegations.

92 *Id.* (quoting *United States v. Dreyer,* 533 F.2d 112, 116 (3d Cir.1976)).

has extenuated that anxiety.[93] As a result, the anxiety he has suffered appears to be the exact form that we would expect to be inevitable in any criminal case. This means that the vague allegations of his anxiety also cannot serve as a form of specific prejudice here.

Picca's final claim of specific prejudice is that the "investigation [of his case] has been fraught with witnesses he has been unable to locate, witnesses who could not recall specific details of events due to the passage of time of almost a decade, and some, [sic] who have self reported that they have moved on with their life since these events, [sic] and were not interested in cooperating with the defense at this point in time."[94] "To establish that his defense was specifically prejudiced by the delay, a defendant cannot rely on general allegations. Speculative and conclusory assertions cannot satisfy a defendant's burden of showing specific prejudice due to impairment of his defense."[95] Picca's general statements are just that and do not show that his defense has been impaired as a result of the delay.[96] Further, "where

---

93 The only time the delay is mentioned in the section on anxiety is a sentence on financial hardship. *See* Doc. 110, at 12. But it is entirely unclear how this is connected to his anxiety or concern. Nevertheless, this too is devoid of any factual basis in the record, and it is not discussed how a quicker trial would have aided his financial situation.

94 *See* Doc. 110, at 11.

95 *United States v. Green*, 471 F. Supp. 3d 577, 601 (M.D. Pa. 2020) (citing *Hakeem v. Beyer*, 990 F.2d 750, 763 (3d Cir. 1993)).

96 *See United States v. Battis*, 589 F.3d 673, 682 (3d Cir. 2009). Additionally, it is not explained how these effects were exacerbated by the delay and were not an effect of the time when this conduct was indicted. That is to say, this statement could be read as an argument against the indefinite statute of limitations for the charges in this case, having nothing to do with the delay. A specific claim of prejudice demands more.

there has been the recognition of 'the possibility of impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case[,] ... [t]hat possibility of prejudice is not sufficient to support [the defendants'] position that their speedy trial rights were violated.'"[97] The entire argument surrounding this issue is too general and conclusory to establish specific prejudice for this analysis. As a result, Picca has failed to establish specific prejudice for the purposes of the fourth *Barker* factor.

However, because the delay in this case is beyond forty-five months, there has been a long enough period of time to trigger the presumption of prejudice.[98] However, this presumption can be rebutted by a showing that a defendant acquiesced in the delay. The record, as pointed to by the Government, establishes that Picca has acquiesced in this delay.[99] This is made out by the fact that Picca filled eight continuances in the case while he was on supervised release.[100] These continuances were made under no duress, and in none of them did an issue regarding prejudice

---

[97] *Green*, 471 F. Supp. 3d at 601 (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)).

[98] *Battis*, 589 F.3d at 683. Importantly, this is true even where, as here, a significant amount of the delay was not attributable to the Government. *See id.* ("We now hold that prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government"). However, the Court notes that the specific prejudice here is undercut by the facts that much of the delay was caused by the Defendant and "any delay caused by the Government, was done with Defendant's concurrence therein." *United States v. Jones*, No. 3:21-CR-126, 2024 WL 4941020, *12 (M.D. Pa. Dec. 2, 2024).

[99] The Court notes that this was point was made out throughout the Government's brief in opposition and not in the sections discussing any of the *Barker* factors.

[100] *See* Docs. 22, 24, 26, 30, 48, 52, 56, 70.

arise. Therefore, the record makes clear that Picca was content to sit outside of confinement and await a trial in the indeterminate future. This is sufficient to show that the Defendant acquiesced in the delay, and, as a result, the presumed prejudice has been mitigated. Therefore, this factor favors the Government.[101]

**5. Balancing**

In sum, the first two *Barker* factors support the Defendant, while the latter two factors weigh in favor of the Government. This is a close case, but it appears to be one that is analogous to *Barker* itself. In the canonical case setting forth the test for constitutional speedy trial violations, there was an extraordinarily lengthy period of delay of five-years and "a good period of that period was attributable" to the Government.[102] While the present case has not hit five-years of delay, the length of delay here was extraordinary and much of it is attributable to the Government.

However, the *Barker Court saw* "[t]wo counterbalancing factors" that "outweigh[ed those] deficiencies."[103] First, the prejudice to the Defendant was

---

[101] Additionally, while the Government has not affirmatively established that the Defendant's ability to defend himself has been unimpaired, the Defendant's counsel has done so himself by stating unequivocally to the Court and the Government only two months prior to this motion being filed that the Defendant was ready for trial. When this occurred, there was no discussion of any prejudice or difficulty in preparing for that trial. Nevertheless, this does not meet the high burden imposed on the Government to disprove presumed prejudice, *see United States v. Velazquez*, 749 F.3d 161, 184 (3d Cir. 2014), as it was not set forth by the Government. Nevertheless, *Barker* made clear that its factors were not exclusive and they "must be considered together with such other circumstances as may be relevant." *Barker v. Wingo*, 407 U.S. 514, 533; *see also United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009). Therefore, this statement by defense counsel and its lack of indication of any prejudice was considered in my analysis.

[102] *Barker,* 407 U.S. at 533-34.

[103] *Id.* at 533.

extremely minimal.[104] Just as in this case, there was no serious prejudice shown.[105] Second, and more importantly, is "the fact that [Picca] did not want a speedy trial."[106] In the present case there was "no action whatever taken [prior to the fling of this motion at the Court's request] that could be construed as the assertion of the speedy trial right. . . . Instead[,] the record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced … he definitely did not want to be tried."[107]

Just as in *Barker*, here the third and fourth factors outweigh the first and second, and the Court is "reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."[108] Therefore, Picca was not deprived of his Sixth Amendment right to a speedy trial.

## III. CONCLUSION

For the above-stated reasons, the motion to dismiss will be granted in part and denied in part. It will be denied to the extent that it sought dismissal with prejudice. It will be granted to the extent it sought dismissal under the Speedy Trial

---

104 *Id.* at 534.

105 In this case, there is additionally no general prejudice as that has been shown to be mitigated by the acquiescence of the Defendant.

106 *Id.*

107 *Id.* at 534-35.

108 *Id.* at 435.

Act. This means that the superseding indictment in this case will be dismissed without prejudice.

Despite the Government obtaining the relief it argued for in its brief in opposition to this motion, it should not view this decision as a success. There can be no doubt that the Government was negligent and failed to uphold its duty to diligently bring Picca to trial. Before it takes any further action in regard to Picca, the Court urges the Government to deeply consider if it wants to bring these charges again. If it does, it should be prepared to diligently advance the case towards a trial, as it has failed to do in the present case.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge